**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DEMETRUS COLE, # S01875,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17-cv-450-NJR** |
| | ) | |
| **FRANK LAWRENCE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

# <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

In 2010, Petitioner Demetrus Cole was convicted of first-degree murder and robbery after a jury trial in Jefferson County, Illinois. He was sentenced to consecutive prison terms of 45 years for murder and 7 years for robbery. He is now in custody of the Illinois Department of Corrections at Menard Correctional Center.

Cole filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). His *pro se* Petition raises the following grounds:

1. The trial court erred in refusing to instruct the jury to consider an accomplice's testimony skeptically.

2. The trial court violated the Confrontation Clause by allowing Lindsay McIntosh to testify about incriminating hearsay statements made by Krysta Donoho.

3. Trial counsel was ineffective in that he failed to:

   a. offer an instruction that the jury could not consider any out-of-court statements from Detective Kemp's testimony for the truth of the matter asserted; and

   b. offer an instruction that the jury should determine whether Cole made incriminating out-of-court statements and what weight should be given to them.

4. The trial court violated the Confrontation Clause by allowing Detective Kemp to refer to information learned during the course of his investigation.

     5. The trial court violated due process by allowing lay witness Ratasha Turner to testify that "hit a lick" means to commit a robbery.

     6. Trial counsel was also ineffective in that he failed to:

         a.    object to Turner's testimony that "hit a lick" means to commit a robbery or introduce evidence to the contrary;

         b.    request a recess to retake photographs of the victim's home at night; and

         c.    to interview and call purported alibi witnesses.

     7. The trial court denied Cole the right to present a complete defense when it refused to admit photographs taken of the victim's home from inside a vehicle.

Respondent filed a Response at Doc. 17. Relevant portions of the state court record are attached to Doc. 18. Cole filed a Reply at Doc. 21.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

**1.**     **State Trial Proceedings**

This summary of the facts is derived from the detailed description by the Illinois Appellate Court, Fifth District, in its Rule 23 Orders affirming Cole's conviction on direct appeal and affirming the dismissal of his postconviction petition. *People v. Cole*, No. 5-10-0542[1] (Aug. 15, 2012); *People v. Cole*, No. 5-14-0163 (Nov. 29, 2016); (Docs. 18-4 and 18-10).[2] The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which Cole has not done. 28 U.S.C. § 2254(e).

The victim, Randy Farrar, was found dead at the bottom of the basement steps in his home on July 5, 2006. Detective John Kemp of the Jefferson County Sheriff's Department investigated the death. At Farrar's home Kemp found blood droplets on the floor leading to the basement door,

---

[1] State court documents refer to Cole as "Demetrius" Cole, but he spells his first name as "Demetrus" in his filings in this Court.

[2] Citations in this Order are to the document, exhibit, and page numbers assigned by the Case Management/Electronic Case Filing ("CM/ECF") system. Unless otherwise specified, all exhibits referred to are attached to Doc. 18.

a blood splatter on the wall leading to the basement, broken glass in the kitchen, and a dent in the drywall in the living room. There were gray hairs in the dent. It was determined that the hairs matched Farrar's hair. Two shell casings from a .380-caliber firearm were found near Farrar's body. The master bedroom was in disarray, and a drawer was lying on the floor. The evidence indicated that Farrar had hidden money in the drawer, as well as in the bathroom and the bedroom closet. There was a case for a Walther PPK .380 pistol. The pistol was gone but the receipt showed Farrar was the owner. There was also a Post-It note with the name "Susan" and a phone number written on it in the bedroom. (Doc. 18-4, pp. 1-2).

The phone number on the Post-It note was traced to Gwendolyn Jones, who was the mother of Demetrus Cole and Christopher Watkins. Twenty-nine phone calls were made between Jones's phone number and Farrar's home and cellular phones from June 24, 2006, to July 1, 2006. There were no more calls after July 1, and the last outgoing call from Farrar's phone to any number was made on July 1. (Doc. 18-4, p. 2).

Detective Kemp interviewed Gwendolyn Jones and Christopher Watkins. Ultimately, the investigation established that Watkins, Cole, Krysta Donoho (Cole's girlfriend), and Chandra Jones were present at the scene of Farrar's death. Jones, who was 16 years old at the time and was no relation to Gwendolyn Jones, had only recently met the others. The investigators believed that Donoho engaged in sex for money with Farrar. Donoho, Watkins, and Cole were arrested for Farrar's murder. (Doc. 14-4, p. 2).

Chandra Jones testified that in early July 2006, she, Krysta Donoho, Christopher Watkins, and Demetrus Cole drove in a white Ford Expedition to a Casey's General Store, where Donoho made a phone call. Surveillance video showed Donoho using that phone, and phone records showed that a call was made from that store to Farrar on the evening of July 1, 2006. They then

drove to Farrar's house. Jones and Donoho went to the door. Donoho went into the house, and Jones went back to the car because Farrar said she was not welcome in the house. The car was parked in the driveway but was moved to a private drive across the street after Jones got back in it. Cole and Watkins then got out and talked, got back in the car, and backed the car into Farrar's driveway. The two men got out of the car and walked around the back of Farrar's house. Jones was then able to see Cole and Watkins inside the house through the front window. (Doc. 18-4, pp. 2-3).

Chandra Jones testified that she stayed in the car and saw what happened through the front window of the house. She saw Cole and Watkins crawl behind a couch while Donoho and Farrar walked in front of it. Cole and Watkins started beating Farrar. They moved into another part of the house where she could not see them, and then the lights in the house were turned off. Jones heard two gunshots. Watkins returned to the car first with "a lot" of money in his hand. Cole and Donoho returned, and they left. Cole threatened to kill anyone who talked about that night "like he did the man." (Doc. 18-4, p. 3).

Chandra Jones testified they drove to a gas station and got gas, and then Cole and Watkins went into the McDonald's next door. Surveillance video showed Cole and Watkins inside the McDonald's. Ratasha Turner was working in the McDonald's. Turner testified that Cole was holding "hundreds" of dollars and flipped through the money to find a small bill to pay for his order. She asked him where he got the money, and he said they "hit a lick." Turner testified that meant they robbed someone. They then drove to a Sonic, and Watkins went inside to talk to his girlfriend. Cole got out of the car and threw something away in the dumpster. (Doc. 18-4, p. 3).

Later that evening, the group returned to Farrar's house to retrieve a change bowl that one of them had touched. Jones again stayed in the car. They then returned to Gwendolyn Jones's

4

house. Chandra Jones went into Watkins's bedroom while the other three talked in another room. Watkins told Chandra Jones they were going "back to the house" to get a key to the safe. When the three returned to Gwendolyn Jones's house they gave her $200.00. (Doc. 18-4, p. 3).

Tanya Melton, a friend of Watkins, testified that Watkins, Cole, and Donoho asked her to give them a ride at around 11:00 a.m. on July 2, 2006. They first went to Casey's General Store, where Donoho used the phone. Surveillance video shows Melton's car in the parking lot, and phone records reflect that a call was made from that payphone to Farrar's phone at 11:31 a.m. Cole then directed Melton to drive to Farrar's house and back into the driveway. Watkins, Cole, and Donoho went around to the back of the house and returned in about five minutes. Donoho had something in her hands. They gave Melton $40.00 for driving them. (Doc. 18-4, p. 4).

Lindsay McIntosh, a friend of Donoho, testified that she had a birthday party for her son on July 1, 2006. Krysta Donoho was invited but did not come. A few days later, Donoho asked McIntosh to tell the police that Donoho had been at the party. McIntosh refused. About a week later, Donoho called McIntosh and said she had set someone up and they had gotten killed. Donoho also said that Cole had been present during the murder. (Doc. 18-4, p. 4).

Dr. Mark LeVaughn performed Farrar's autopsy. He testified that the cause of death was a gunshot wound to the head. Farrar also suffered a grazing gunshot wound, bruising on his head and forearm, and two broken ribs. The bruising and broken ribs were caused near the time of death, and they were consistent with being hit and kicked by another person. Farrar's body was recovered on July 5, 2006, and Dr. LeVaughn testified that Farrar had died at least thirty-six hours before his body was found, so it would have been impossible for someone to see Farrar alive on the evening of July 4. It was possible Farrar died on July 1. (Doc. 18-4, p. 4).

A firearms expert testified that the shell casings found in Farrar's basement were fired from

the same weapon, and they could have been fired from a .380 automatic pistol. He was unable to say whether they had been fired from the Walther PPK .380 pistol without having the firearm to test. (Doc. 18-4, p. 4).

Cole presented witnesses who said they saw Farrar alive on July 2 and July 4, 2006. (Doc. 18-4, p. 4). Other facts will be discussed as necessary in the analysis below.

**2.     Direct Appeal**

As is relevant here, Cole raised the following points on appeal:

1.  The trial court erred in refusing to instruct the jury that accomplice testimony should be viewed with suspicion.

2.  McIntosh's testimony about Donoho's incriminating statements violated the Confrontation Clause.

3.  Trial counsel was ineffective in that he failed to:

    a.      offer an instruction that the jury could not consider any out-of-court statements from Detective Kemp's testimony for the truth of the matter asserted; and

    b.      offer an instruction that the jury should determine whether petitioner made incriminating out-of-court statements and what weight should be given to them.

(Doc. 18-1).

After his conviction was affirmed, Cole filed a *pro se* Petition for Leave to Appeal (PLA) raising the above points. (Doc. 18-5). The Supreme Court denied the PLA. (Doc. 18-6).

**3.     Postconviction Petition**

Cole's postconviction petition raised the following relevant points:

1.  The trial court violated the Confrontation Clause by allowing Detective Kemp to refer to information learned during the course of his investigation.

2.  The trial court violated due process by allowing Turner to testify that "hit a lick" means to commit a robbery.

3. Trial counsel was ineffective in that he failed to:

    a. object to Turner's testimony that "hit a lick" means to commit a robbery or introduce evidence to the contrary;

    b. request a recess to retake photographs of Farrar's home at night; and

    c. interview and call purported alibi witnesses.

4. The trial court denied Cole the right to present a complete defense when it did not admit photographs taken of Farrar's home from inside a vehicle.

(Doc. 18-19).

The trial court dismissed the petition at the first stage. (Doc. 18-20). On appeal, Cole raised the arguments noted above, as well as a claim that appellate counsel on direct appeal was ineffective for failing to raise them. (Doc. 18-7). The Appellate Court affirmed. (Doc. 18-10). Cole's counseled PLA raised only ineffective assistance of appellate counsel. (Doc. 18-11). The Illinois Supreme Court denied the PLA on March 29, 2017. (Doc. 18-12).

LAW APPLICABLE TO SECTION 2254 PETITION

## 1. Substantive Law

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is *not* merely another round of appellate review. Under 28 U.S.C. § 2254(d), habeas relief is restricted to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The Supreme Court has repeatedly emphasized that the Section 2254(d) standard "is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), and *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "A state court's decision is reasonable, even if incorrect in our independent judgment, so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.'" *McDaniel v. Polley*, 847 F.3d 887, 893 (7th Cir. 2017) (internal citations omitted). For habeas relief to be granted, the state court's application of federal precedent must have been "objectively unreasonable," meaning

"something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal citations omitted).

## 2.      Timeliness, Exhaustion, and Procedural Default

In addition to the requirement for timely filing under the AEDPA, a habeas petitioner must clear two procedural hurdles before a court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Bolton v. Akpore*, 730 F.3d 685, 694-696 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also* 28 U.S.C. § 2254(c). Under the Illinois two-tiered appeals process, habeas petitioners must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id*. Failure to do so results in procedural default.

Respondent asserts that several claims raised by Cole are procedurally defaulted.

### ANALYSIS

### Claim 1 – Jury Instruction on Accomplice Testimony

Cole argues that "the trial court abused its discretion when it refused to instruct the jury pursuant to I.P.I. Criminal No. 3.17 that the testimony of an accomplice should be viewed with suspicion." (Doc. 1, p. 23). The point here and in the state courts was presented as a matter of state law, *i.e.*, whether Chandra Jones qualified as an accomplice to Cole's crimes.

28 U.S.C. §2254 affords habeas relief only where a petitioner's custody violates *federal* law. *Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011), citing *Estelle v. McGuire*, 112 S. Ct. 475, 480

(1991). Because Cole's first claim is based on state law, it cannot be considered here.

In his Reply (Doc. 21), Cole states that he intended to "constitutionalize" his first claim, and he invokes the Fifth and Fourteenth Amendments. This does not carry the day for two reasons. First, the argument he makes is still grounded in state law, *i.e.*, that Chandra Jones should have been considered as an accomplice and the trial court abused its discretion in refusing to give the accomplice testimony instruction. (See Doc. 21, p. 2). Second, Cole did not fairly present a federal constitutional claim to the state courts because he did not argue in state court that the failure to give the accomplice testimony instruction violated his Fifth or Fourteenth Amendment rights. Thus, any such claim is procedurally defaulted and cannot be considered here. *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013).

**Claim 2 – Confrontation Clause; Lindsay McIntosh's Testimony**

Cole argues here that Lindsay McIntosh's testimony about Krysta Donoho's statements violated the Confrontation Clause. The point as presented to the state court was that it was error to admit the testimony under the co-conspirator exception to the hearsay rule because Donoho's statements were not made in furtherance of the conspiracy. The Appellate Court held on direct appeal that no error occurred because Donoho's request for a false alibi was an attempt to conceal the conspiracy, and her admission that she set someone up and he got killed was an admission against her own penal interest. Further, she said only that Cole had been with her, not that Cole had committed the murder. (See Doc. 18-4, p. 7).

McIntosh's testimony does not present a Confrontation Clause issue. Under Supreme Court precedent, "a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial." *Ohio v. Clark*, 576 U.S. 237, 135 S. Ct. 2173, 2180 (2015). A statement is testimonial where the "'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for

trial testimony.'" *Ibid.* Statements made to persons who are not law enforcement officers are "significantly less likely to be testimonial than statements given to law enforcement officers." *Id.* at 2182.

The primary purpose of the conversations between McIntosh and Donoho was not to create an out-of-court substitute for trial testimony in Cole's trial. Rather, Donoho's evident purpose was to create a false alibi for herself. Therefore, there was no Confrontation Clause issue.

**Claim 3 – Ineffective Assistance for Failure to Request Jury Instructions**

A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington,* 466 U.S. 668 (1984). Analysis under *Strickland* and on habeas review under Section 2254 are both highly deferential. Where, as here, both apply, the review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Further, because *Strickland* sets forth a general standard, "the range of reasonable applications is substantial." *Ibid.*

In order to show ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 466 U.S. at 687-88. A petitioner must satisfy both prongs of the *Strickland* analysis to be eligible for habeas relief. There is no mandatory order for the analysis, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. *Id.* at 697.

Under the first *Strickland* prong, the Court must inquire into "the objective reasonableness of counsel's performance." *Harrington*, 562 U.S. at 110. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* To avoid the temptation to second-guess counsel's assistance, there is a strong presumption of adequate assistance and the exercise

of reasonable professional judgment. *Id.* at 107-08. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To satisfy the second prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. Ultimately, "[t]he focus of the *Strickland* test for prejudice … is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010). Again, this Court's task is to determine whether the state court's decision was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1).

On direct appeal, the Appellate Court found that counsel's failure to request the two jury instructions was harmless. The failure to request an instruction that the jury could not consider any out-of-court statements testified to by Detective Kemp for the truth of the matter asserted was harmless because Detective Kemp testified about the course of the investigation and did not testify as to the substance of any statements made by Watkins or Chandra Jones. Detective Kemp testified that during the course of his interview of Watkins, "the officers 'found that [the defendant] was present' during Farrar's murder." Noting that Cole's presence was already established by other testimony, the court reasoned that the failure to request the instruction was harmless. The court found that the failure to request an instruction on the jury's consideration of Cole's incriminating out-of-court statements was harmless because the jury was given another instruction on judging the believability of witnesses and the weight to be given to their testimony. In addition, counsel

asked questions on cross-examination of Chandra Jones designed to suggest that her testimony that Cole threatened to kill anyone who talked was recently fabricated. Counsel further attempted to show that Ratasha Turner's recollection of that night was not clear, thereby lessening the impact of their testimony. (Doc. 18-4, pp. 7-9).

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The question for this Court is not whether it believes trial counsel was ineffective. Rather, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. In that vein, Section 2254, as amended by AEDPA, "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further." *Harrington*, 562 U.S. at 102. As the Seventh Circuit has observed, "the bar for establishing the unreasonableness of a state court's application of *Strickland* 'is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Jones v. Brown*, 756 F.3d 1000, 1007 (7th Cir. 2014) (citing *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009)).

Cole does not come close to demonstrating a clear error in the state court's application of *Strickland*. The state court did not directly cite *Strickland*, but it was not required to do so. *Early v. Packer*, 537 U.S. 3, 8 (2002). The state court did cite *People v. Graham*, 206 Ill. 2d 465, 476, 795 N.E.2d 231, 238 (2003), which discussed *Strickland*. The Appellate Court's analysis demonstrates that it understood the two-part *Strickland* rule and applied it in a reasonable manner. Cole has not demonstrated that it was unreasonable to conclude that the outcome was not substantially likely to have been different had the two instructions been given to the jury. The state court's conclusion was certainly within the boundaries of permissible differences of opinion

13

among fairminded jurists in applying *Strickland*. *See Harrington*, 562 U.S. at 102.

**Claim 4 – Confrontation Clause; Detective Kemp's Testimony**

Cole's argument here centers on Detective Kemp's testimony that, during the course of his investigation, he interviewed Chandra Jones and Christopher Watkins and learned that Cole had been present at Farrar's murder. In addition, the prosecutor prefaced a question to Kemp with the statement, "So you at this point have learned that [the defendant], Chris Watkins, and Krysta Donoho were involved in the crime." (Doc. 18-10, p. 2). Defense counsel did not object to the prosecutor's statement. Cole argues that Kemp's testimony about Watkins's statement, amplified by the prosecutor's statement, violated the Confrontation Clause.

Cole raised this claim in his postconviction petition. (Doc. 18-19, pp. 20-25). In affirming the dismissal of the petition, the Appellate Court held that the claim as to Detective Kemp's testimony about Watkins's statement was raised in a slightly different form on direct appeal and so was properly dismissed by the postconviction petition court as *res judicata*. And the claim about the prosecutor's statement did not prejudice Cole because Chandra Jones testified that he was involved in the crime. (Doc. 18-10, p. 3).

The claim that Cole presents here is procedurally defaulted because it was not raised in one full round of state court review. The claim was presented in his postconviction petition and on appeal, but it was not raised in his PLA. The PLA argued only that the trial court's dismissal was erroneous because the postconviction petition raised an arguable claim of ineffective assistance by appellate counsel. (See PLA, Doc. 18-11). Procedural default is an affirmative defense, however, that must be raised by the respondent. *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009). Respondent does not argue that this claim is procedurally defaulted. Rather, he argues that the state court correctly held on direct appeal that Detective Kemp testified only as to the course of his

investigation, and the Appellate Court correctly held on appeal from the dismissal of the postconviction petition that a Confrontation Clause argument was precluded by *res judicata*. Further, he argues that any error regarding Detective Kemp's testimony was not prejudicial enough to warrant habeas relief.

Without deciding that there was an error, this Court agrees that any error regarding Detective Kemp's testimony does not merit habeas relief. A federal court may not grant habeas relief unless a constitutional violation "had substantial and injurious effect or influence in determining the jury's verdict." *Davis v. Ayala*, 576 U.S. 257, 135 S. Ct. 2187, 2197-98 (2015). Petitioner must show "more than a reasonable possibility" that the error was harmful. *Id*. at 2198.

Cole cannot make the required showing here. Respondent correctly argues that, in light of the other evidence establishing Cole's involvement, Detective Kemp's fleeting reference to Watkins's interview and the prosecutor's statement were harmless. That other evidence includes Chandra Jones's testimony, corroborating phone records and surveillance video from Casey's, Circle K, and McDonald's, Ratasha Turner's testimony, McIntosh's testimony, and Melton's testimony.

### Claim 5 – Ratasha Turner's Testimony

Cole argues that his due process rights were violated by Ratasha Turner's testimony that to "hit a lick" means to commit a robbery.

Respondent argues, correctly, that this claim is procedurally defaulted. Cole did not present a stand-alone constitutional claim about Turner's testimony for one full round of state court review. Cole says in his Petition that he included this claim in a motion for leave to file a supplemental *pro se* brief on direct appeal, but the Appellate Court denied him leave to file the *pro se* brief. (*See* Doc. 1, pp. 14, 31). This claim is therefore defaulted because the state Appellate Court rejected it

15

on an independent and adequate state law ground, *i.e.*, its general rule against hybrid representation. *See Clemons v. Pfister*, 845 F.3d 816, 820 (7th Cir. 2017). Cole agrees that this claim is procedurally defaulted and should not have been included in his Petition. (Doc. 21, p. 10).

**Claim 6 – Ineffective Assistance of Trial Counsel**

Cole argues that trial counsel was ineffective in that he failed to (a) object to Turner's testimony that to "hit a lick" means to commit a robbery or introduce evidence to the contrary; (b) request a recess to retake photographs of the victim's home at night; and (c) to interview and call purported alibi witnesses.

The claim about Turner's testimony was raised in his postconviction petition. Again, because the PLA raised only ineffective assistance by appellate counsel, this claim is procedurally defaulted. But Respondent has not raised procedural default. He argues instead that the Appellate Court's resolution of the claim was a reasonable application of *Strickland*.

The Appellate Court noted that defense counsel started to object to Turner's testimony about the meaning of "hit a lick" but did not follow through on the objection. The Appellate Court determined that Turner's testimony was not improper opinion testimony because she was testifying only to her understanding of the phrase, an understanding which was bolstered by Cole's possession of "hundreds of dollars." Thus, counsel's failure to object was not ineffective. The court also correctly noted that deciding when to object is a matter of trial strategy and that it must defer to counsel's choice of trial strategy. Cole attached affidavits from his mother and another woman stating that they used the phrase "hit a lick" to refer to winning money at gambling at a casino. (Doc. 18-19, pp. 86-87). The state court held that counsel was not ineffective for failing to present such evidence at trial because it was a matter of trial strategy. The court pointed out that Cole did not argue that Turner's understanding of "hit a lick" was incorrect, only that the phrase also had

16

another meaning. (Doc. 18-10, pp. 3-4).

Applying the "doubly" deferential standard of review mandated by *Harrington*, 562 U.S. at 105, this Court must conclude that the state court's resolution of the issue was a reasonable application of federal precedent. Under *Strickland*'s performance prong, a court examines "the objective reasonableness of counsel's performance." *Harrington*, 562 U.S. at 110. Counsel could reasonably have decided that it was sound trial strategy to avoid highlighting Turner's testimony by objecting to it or offering evidence that "hit a lick" has another meaning. *Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003). And Cole does not claim that he furnished his lawyer with evidence that he had, in fact, recently won a large amount of money gambling. The affidavits attached to his petition do not state that Cole used "hit a lick" to mean winning money by gambling, nor do they state that Cole had won a sizeable of money gambling at the relevant time. Counsel could well have decided that offering the alternate meaning of the phrase without evidence of recent gambling winnings would only serve to highlight Cole's unexplained possession of a large amount of cash. Lastly, such evidence would have been contrary to counsel's theory of the case. Counsel argued that Turner's testimony that Cole flashed a large amount of cash in McDonald's was not reliable. (*See* transcript of closing argument, Doc. 18-18, pp. 86-87).

For his second claim of ineffective assistance, Cole argues that counsel should have requested a recess to take photos of the front of Farrar's house at night. Counsel had offered some photos of Farrar's house taken from inside a vehicle, the vantage point where Chandra Jones was sitting. The photos were taken during the day, about two years after the murder. The trial court sustained the state's objection to the admission of the photos because there was a glare on the windshield which obscured the view, and the pictures did not show the front of the house as it looked in July 2006. Chandra Jones testified she was able to see into the house through a large

picture window. The house had been remodeled by the time the pictures were taken. In the remodeling, that large picture window had been moved. The trial court did admit other photos of the front of the house showing the distance from the vehicle to the house. (Doc. 18-10, pp. 5-6).

Cole raised this claim in his postconviction petition. As Respondent argues, however, the claim is procedurally defaulted because it was not included in the PLA. (Doc. 18-11). The PLA argued only the ineffective assistance of appellate counsel and did not mention the photographs at all.

In addition to being defaulted, the claim has no merit. The Appellate Court found that trial counsel had not been ineffective because any photos taken at the time of trial would have been inadmissible because they would not have accurately depicted the front of the house as it looked in July 2006. (Doc. 18-10, pp. 6-7). "[A]n attorney is not ineffective for failing to raise a meritless argument." *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018).

For his third argument, Cole asserts that trial counsel failed to interview and call two alibi witnesses. He argues that counsel should have called Shirleta Blount and interviewed Blount's mother. Cole raised this claim in his postconviction petition, but it was not included in the PLA. (Doc. 18-11). Respondent argues, correctly, that this claim is therefore procedurally defaulted.

The point is without merit in any event. The state court rejected the claim about Blount's mother because Cole did not furnish an affidavit stating what her testimony would have been, as required by Illinois law. (Doc. 18-10, p. 6). "When a state court resolves a federal claim by relying on a state law ground that is both independent of the federal question and adequate to support the judgment, federal habeas review of the claim is foreclosed." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) (internal citation omitted). The Illinois affidavit requirement is an independent and adequate state ground, which bars habeas review in federal court. *Thompkins v. Pfister*, 698

18

F.3d 976, 986 (7th Cir. 2012). And the state court reasonably concluded that counsel made a strategic decision not to call Shirleta Blount after interviewing her. There was no affidavit from Shirleta either, but a police report indicated that she told police that Cole was with her "around the 1st or 2nd of July 2006." Cole called her at work and asked if he could go to her house. He came to her workplace and picked up her housekey. Shirleta did not get home from work, however, until 11:45 p.m. Cole was at her house then and spent the night. (Doc. 18-10, p. 5). Because Shirleta's statement did not give Cole a strong alibi, the state court's conclusion was a reasonable application of *Strickland*.

**Claim 7 – Denial of Right to Present A Complete Defense**

For his final claim, Cole argues that the trial court denied him his due process right to present a complete defense by excluding the photos of Farrar's house taken from inside a vehicle during daylight hours.

Respondent argues, correctly, that this claim is procedurally defaulted because it was not presented for one full round of state court review. Cole says in his Petition that he included this claim in a motion for leave to file a supplemental *pro se* brief on direct appeal, but the state appellate court denied him leave to file the *pro se* brief. (Doc. 1, pp. 14, 36). This claim is therefore defaulted because the state Appellate Court rejected it on an independent and adequate state law ground, *i.e.*, its general rule against hybrid representation. *See Clemons v. Pfister*, 845 F.3d 816, 820 (7th Cir. 2017) (holding that the Illinois rule against hybrid representation is an independent and adequate state law ground).

In addition to being defaulted, the claim has no merit. A defendant has a right to present a complete defense. *Chambers v. Mississippi*, 410 U.S. 284 (1973). One of the requirements for showing a *Chambers* violation is that the petitioner must show that the excluded evidence was

"essential to [his] ability to present a defense," not "cumulative, impeaching, unfairly prejudicial, or potentially misleading," and "reliable and trustworthy." *Kubsch v. Neal*, 838 F.3d 845, 858 (7th Cir. 2016). Cole cannot make the required showing. He wanted to use the photographs for impeachment to show that Chandra Jones could not have seen what she claimed she saw. (*See* Petitioner's Reply, Doc. 21, p. 13). The photographs were taken after the large picture window that Jones said she looked through was moved and there was glare on the windshield, obscuring the view. (Doc. 18-10, p. 4). Because the photographs were impeachment material and potentially misleading, there was no *Chambers* violation.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, no reasonable jurist would find it debatable whether this Court's rulings on procedural default or on the substantive issues were correct. Accordingly, the Court denies a certificate of appealability. Cole may reapply for a certificate of appealability to the United States

Court of Appeals, Seventh Circuit. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1).

CONCLUSION

For the reasons set forth above, Demetrus Cole's Petition for Habeas Relief Pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED**. This entire action is **DISMISSED with prejudice**. The Clerk of Court shall enter judgment accordingly.

If Cole wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 30 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues he plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Cole does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

**IT IS SO ORDERED.**

**DATED:  May 6, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**